FILED

10/21/2024

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 9, 2024

**STATE OF TENNESSEE v. CHRISTOPHER L. DOWLEN**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC4-2020-CR-199  Robert Bateman, Judge**

_____

**No. M2024-00534-CCA-R3-CD**

_____

The Defendant, Christopher L. Dowlen, appeals the Robertson County Circuit Court's order revoking his probation and requiring him to serve his original four-year sentence for his conviction for failure to register as a sex offender in confinement. The Defendant contends the trial court abused its discretion in revoking his probation and ordering him to serve his sentence in confinement (1) by finding sufficient evidence that the Defendant possessed a firearm in violation of his probation, and (2) by failing to consider whether full revocation of his sentence would serve the "ends of justice" and "best interest" of the Defendant. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and JOHN W. CAMPBELL, SR., JJ., joined

Roger E. Nell, District Public Defender (on appeal); Dan W. Dalrymple, Assistant Public Defender (at trial), for the appellant, Christopher L. Dowlen.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Robert J. Nash, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 13, 2021, the Defendant entered a guilty plea to failure to register as a sex offender and received a sentence of four years which was suspended to supervised probation after service of 180 days of incarceration. The conditions of the Defendant's probation required him to obey the law and not to "receive, own, possess, ship or transport

firearms, ammunition or illegal weapons." In addition, the Defendant was required to register any social media accounts used for Internet communication with the Sex Offender Unit of the Tennessee Department of Correction (TDOC) within three days of making the account. On October 27, 2023, a warrant for the Defendant's arrest was issued alleging that the Defendant violated the conditions of his probation based on (1) an arrest for unlawful carrying and possession of a weapon in Robertson County on October 8, 2023, and (2) failing to report and register with the Sex Offender Unit "a complete listing of electronic mail address information or instant message, chat or other Internet communication name or identity that the person uses or intends to use within 48 hours[.]"

A hearing on the Defendant's violation of probation was held on March 15, 2024. Laquita Cox, a probation officer assigned to the Sex Offender Unit, testified that on October 8, 2023, a random search of the Defendant's residence was conducted as required by the terms and conditions of his probation. She went to the Defendant's house, along with three other TDOC officers. Upon arrival, Cox observed several people outside of the house, and as they approached, someone closed the front door to the house. Cox knocked on the door, and the Defendant answered and allowed them inside. Cox noticed the house was full of about ten other people, and they were told to leave. The Defendant headed towards his bedroom while Cox and another officer followed him. While Cox stood in the doorway to the Defendant's bedroom, she saw him put "stuff" into his pockets. The other officers went into the Defendant's bedroom and instructed him to empty his pockets. The Defendant emptied his pockets, which contained marijuana, cash, and a "grinder." Officers searched the Defendant's bedroom and other rooms in the house. Officers found marijuana and a handgun that was "wrapped inside a black t-shirt stuffed inside an ottoman in the [Defendant's] room." Another firearm was found in the top of a closet in another bedroom. Photographs of the firearms recovered from the Defendant's home were admitted into evidence at the hearing. The Defendant's adult son claimed the firearm found in the other room, but no one claimed the firearm found in the Defendant's bedroom.

While the officers searched the Defendant's house, Officer Cox had possession of the Defendant's phone and searched through his social media accounts. Officer Cox found Facebook, Instagram, and Snapchat accounts that were not registered with the Sex Offender Unit on the Defendant's phone. The social media accounts were found on the Defendant's "apps" listed on his phone, they did not require an additional sign-in to be accessed, and the "app" history showed that the Defendant had updated his profile picture on Facebook nearly three months before the search, posted a picture on Instagram six days prior to the search, and posted pictures on Snapchat eleven months prior to the search.

At this point, the State advised the trial court that it did not have any further proof, and the Defendant elected not to testify. The court determined by a preponderance of the evidence that the Defendant had violated the terms and conditions of his probation. In the

process of determining the appropriate consequence for the violation, the court asked the parties for the disposition of the pending charges against the Defendant. The State advised the court that the Defendant had charges pending in general sessions court. The court asked defense counsel again if he wished to be heard, and with the court's assurance to limit the State's cross-examination, the Defendant elected to testify.

The Defendant agreed that he had pending charges in general sessions court, that he had made all required appearances, and that he had complied with his bond conditions. He was employed as a supervisor at Martinrea, Fabco, worked forty hours a week, and was the sole provider for his family of four which included his five-year-old disabled daughter. His daughter's care included bi-annual doctor's appointments, which were paid for with the insurance provided by the Defendant's employment. The Defendant stated that he had "changed" and that if his probation were revoked, he "would lose everything, the house, [his daughter] and [his] job."

On cross-examination, the Defendant agreed that he provided for his family within the past four years, but not while he was in jail. He agreed that he was added to the sex offender registry in 2000 and had a prior criminal history consisting of a 2009 conviction for violating the sex offender registry, a 2015 "run in" for "felony evading arrest," and a 2016 conviction for another crime. He also acknowledged that he could not possess a firearm and was fully aware of the consequences for violating his probation. During redirect examination, the Defendant claimed that the firearm found in his bedroom belonged to his adult son and that his daughter would be placed in State custody if his probation were revoked.

The State then urged the trial court to revoke the Defendant's sentence and impose the original four-year sentence in confinement based on the Defendant's prior criminal history. Specifically, the State argued that the Defendant was a Range II offender, that he had a 2009 conviction for violating the sex offender registry, that he was currently on probation for the same offense, and that he had been given an opportunity to serve his sentence on probation after serving the minimum punishment for the offense on house arrest. The State emphasized that the Defendant's last probation violation was in 2015, for which he was sentenced to time served. Defense counsel argued that full revocation was "unduly harsh" and urged the trial court to "leave these proceedings open [and] allow[] things to play out[.]"

Before making its determination as to the consequence for violating probation, the trial court asked whether the instant violation of the sex offender registry was the Defendant's third violation of the sex offender registry, and defense counsel conceded that the court's "hands [were] tied as to those things." Although the judgment did not reflect it was the Defendant second offense for violating the sex offender registry, the State

confirmed that the Defendant's prior history reflected that the instant violation of the sex offender registry was his third offense, for which he would be statutorily required to serve no less than a year in confinement. See Tenn. Code Ann. § 40-39-208 (e) (noting that "[a] third or subsequent violation of this part is punishable by a fine of not less than one thousand one hundred dollars ($1,100) and imprisonment for not less than one (1) year").

The court then determined as follows:

> The Court previously has found [the Defendant] in violation by preponderance of the evidence [that] has been established.
> The Court then must look to an appropriate disposition. The Court has heard the proof of [the Defendant] and the Court considers the proof offered by [the Defendant], the proof earlier presented in the previous hearing. The Court takes into account that [the Defendant] has previously been offered opportunities at probation and supervision and in fact, in this particular case, served his time under house arrest. The Court does not like doing this. The Court believes its hands are tied based upon the prior history of [the Defendant]. The Court believes under these particular circumstances in this case has no choice but to order revocation. So, revocation of his supervision is granted, and he is ordered to serve his sentence. He is remanded to custody.

The Defendant timely filed a notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

The Defendant contends the trial court abused its discretion in revoking his probation and ordering him to serve his sentence in confinement (1) by finding sufficient evidence that the Defendant possessed a firearm in violation of his probation, and (2) by failing to consider whether full revocation of his sentence would serve the "ends of justice" and "best interest" of the Defendant. In response, the State contends the trial court properly revoked the Defendant's probation and imposed the original four-year sentence of confinement. We agree with the State.

Trial courts "possess the power, at any time within the maximum time that was directed and ordered by the court for the suspension, in accordance with § 40-35-311, to revoke the suspension." Tenn. Code Ann. § 40-35-310(a). Code section 40-35-311 provides the procedures trial courts must follow during probation revocation proceedings.

- 4 -

"[A] trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release." State v. Beard, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005); see State v. Dagnan, 641 S.W.3d 751, 756 (Tenn. 2022). The statutes in effect at the time of the Defendant's revocation hearing authorize a trial court, after finding a defendant had violated probation, to impose one of the following consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to one year for each violation of Code section 40-35-308(c)(1); or (4) return the defendant to probation on appropriate modified conditions. Tenn. Code Ann. §§ 40-35-308, -310, -311; see Dagnan, 641 S.W.3d at 756 (citing Beard, 189 S.W.3d at 735 and n.2). If the trial court revokes a defendant's probation and suspension of sentence, then the defendant has the right to appeal. Tenn. Code Ann. § 40-35-311(e)(3); Tenn. R. App. P. 3(b).

Probation revocation involves the following two-step consideration: "[a] trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his or her probation, must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." Dagnan, 641 S.W.3d at 753, 757 (footnote omitted). While a trial court is required to conduct a probation revocation hearing pursuant to Code section 40-35-311(b), this two-step consideration does not obligate the trial court "to hold an additional or separate hearing to determine the appropriate consequence." Id. at 757. These two steps are "two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." Id. at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." Id. at 758.

In considering the appropriate consequence to impose upon revocation, a trial court may consider, but is not limited to, the following: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character. Dagnan, 641 S.W.3d at 759. Consideration of past criminal history is only appropriate in the second part of the two-step analysis. Id. (citing State v. Fleming, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018) ("A trial court may not revoke probation based on past criminal acts that were known to the trial court at the time probation was originally granted.").

This court reviews a trial court's revocation of probation for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." Id. at 759. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v.

Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." Dagnan, 641 S.W.3d at 759 (citing State v. Bise, 380 S.W.3d 682, 705-06 (Tenn. 2022)). Sufficient findings serve "'to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary.'" Id. (quoting State v. King, 432 S.W.3d 316, 322 (Tenn. 2014)). However, when an appellate court is presented with a case in which the trial court "failed to place its reasoning for a revocation decision on the record, the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings." Id. (citing King, 432 S.W.3d at 327-28).

We conclude that the trial court properly made the "two distinct discretionary decisions" regarding (1) whether to revoke the Defendant's probation, and (2) the appropriate consequence to impose upon revocation of the Defendant's probation. Id. at 757. As an initial matter, the Defendant contends the trial court abused its discretion in revoking his probation because the testimony of Officer Cox was insufficient to show that he possessed a firearm. Specifically, he argues that although Officer Cox testified that the room in which the firearm was found was the Defendant's bedroom, there was "no rationale as to how she knew or verified that the bedroom was [the Defendant's] and not someone else's or if it was shared with others."

When the ground for revocation of an accused's probation is the commission of a new offense, "the State is required to establish sufficient facts during the revocation hearing to permit the trial judge to make a conscientious and intelligent judgment as to whether the conduct in question violated the law." State v. Harkins, 811 S.W.2d 79, 83 n. 3 (Tenn. 1991). Additionally, "[w]hile we recognize that a new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation, a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation." State v. Winn, No. M2009-00094-CCA-R3-CD, 2010 WL 2516855, at *2 (Tenn. Crim. App. June 22, 2010), no perm. app. filed (citing Harkins, 811 S.W.2d at 83 n.3 (Tenn. 1991)). Instead, "the State must show by a preponderance of the evidence that the defendant violated the law." Id. at *3 (citation omitted).

Tennessee courts have long recognized that "'[p]ossession' [] may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). A person may possess contraband alone or jointly with others. State v. Richards, 286 S.W.3d 873, 885 (Tenn. 2009) (citations omitted); State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Because the firearm recovered in this case was not found on the Defendant's person, the State was required to prove constructive possession, which is generally established upon showing that a person has

- 6 -

"'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting United States v. Craig, 522 F.2d 29, 32 (6th Cir. 1975)). In order to sustain a conviction based exclusively on constructive possession, the proof must establish the defendant's "'ownership, dominion, or control over the contraband itself or [over] the premises or vehicle in which the contraband is concealed.'" United States v. White, 932 F.2d 588, 589 (6th Cir.1991) (quoting United States v. Gordon, 700 F.2d 215, 217 (5th Cir.1983). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. Robinson, 400 S.W.3d at 534 (citing Tenn. Code Ann. § 39-17-419).

The record shows that during a random search of the Defendant's home, officers observed the Defendant answer the door and immediately walk back to his bedroom. Another officer was instructed to follow the Defendant into his bedroom, and Officer Cox was able to observe the interaction based on the open floor plan of the home. She testified that the Defendant was putting "stuff," later determined to be money, marijuana and a grinder, in his pockets. Officer Cox was specifically asked at the hearing if the room the Defendant went into was his bedroom, and she confirmed that it was. She testified that a firearm was recovered that was "wrapped inside of a black t-shirt stuffed inside of an ottoman in his room." Although another firearm was found in another bedroom in the Defendant's home, the Defendant's older, adult son claimed ownership of that firearm at the time of the search. However, no one claimed ownership of the firearm recovered from the Defendant's bedroom. The evidence shows that the Defendant had access to the bedroom and the firearm in the ottoman. Based on the totality of the circumstances, the Defendant had the ability to exercise "'ownership, dominion, or control over the [firearm] itself or over the premises . . . in which the [firearm was] concealed.'" Because the State established by a preponderance of the evidence that the Defendant constructively possessed the firearm found in his bedroom, the trial court did not abuse its discretion in revoking the Defendant's probation on this ground.

In addition, the record shows there was ample evidence establishing the second violation in the warrant requiring the Defendant to report all new social media accounts to the Sex Offender Unit of the Tennessee Department of Correction (TDOC) within three days of making the account. Officer Cox found Facebook, Instagram, and Snapchat accounts that were not registered with the Sex Offender Unit on the Defendant's phone. The social media accounts were found on his phone through their respective "apps" and the history showed that the Defendant updated his profile picture on Facebook nearly three months before the search, posted a picture on Instagram six days prior to the search, and posted pictures on Snapchat eleven months prior to the search. The Defendant admitted at the hearing that he "made a mistake . . . [and] didn't report [his] apps. It was [his] mistake[.]" Accordingly, the trial court properly revoked the Defendant's probation.

Next, the Defendant contends that the trial court abused its discretion in ordering "an unduly harsh full revocation of [the Defendant's] sentence." He argues "given that the only sustainable violation is the unregistered social media accounts, the trial court erred in fully revoking his probation." He further insists that the court "gave no consideration to whether the act of ordering execution of the original sentence would serve the ends of justice and [] the best interests of [the Defendant] and the public." Finally, the Defendant maintains the court did not exercise its discretionary function given its comment that "'its hands [were] tied based upon the prior history of [the Defendant],' such that there was 'no choice but to order revocation.'"

As an initial matter, we have concluded that the trial court properly determined that the Defendant was in constructive possession of the firearm; thus, failing to register the social media accounts is not the Defendant's sole probation violation. Additionally, the record reflects the trial court considered the proof offered by the Defendant and was aware of his family obligations. However, as argued by the State, the Defendant committed prior probation violations with the same obligations, and the court had previously provided the Defendant with an opportunity to serve his sentence on probation and house arrest. We also believe the Defendant mischaracterizes the court's comment about its hands being "tied." In our view, the court's comment referred to Tennessee Code Annotated section 40-39-208 (e), which statutorily required the court to impose a sentence of no less than a year for a third violation of the sex offender registry. The record reflects the court's concern with whether this was the Defendant's second or third violation of the sex offender registry. The State confirmed that it was the Defendant's third violation, and defense counsel acknowledged that the court's hands were "tied" regarding violations of the sex offender registry and the sanctions it could impose. The Defendant also agreed that he was placed on the sex offender registry in 2000 and had a prior criminal history consisting of a 2009 conviction for violating the sex offender registry, a 2015 felony evading arrest conviction, and a 2016 conviction for another crime. The record reflects the court imposed the original four-year sentence of confinement, less jail credits, based on the Defendant's prior criminal history, which this court has deemed appropriate. Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Based on the above reasoning and authority, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE

- 8 -